IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| COURTNEY EXCAVATING & ) | Case No.  04-61485 |
| CONSTRUCTION, INC., ) | |
| ) | |
| ROCK QUARRIES, L.L.C., ) | Case No. 04-61488 |
| ) | |
| Debtors. ) | |
| ) | |
| COURTNEY EXCAVATING & ) | Adversary No. 05-6002 |
| CONSTRUCTION, INC. and ) | |
| ) | |
| ROCK QUARRIES, L.L.C., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| FIRST HOME SAVINGS BANK and ) | |
| ) | |
| UNITED STATES OF AMERICA ) | |
| On behalf of the Internal Revenue Service, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

Debtors-in-possession Courtney Excavating & Construction, Inc. (Courtney) and Rock Quarries, L.L.C. (Quarries) filed this adversary proceeding to determine the validity and priority of liens as to First Home Savings Bank (First Home) and the Internal Revenue Service (the IRS). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1).  The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the

Federal Rules of Bankruptcy Procedure.

## FACTUAL BACKGROUND

Courtney is the only member of Quarries, pursuant to an operating agreement executed on April 26, 1999. Donna and Tony Courtney are the principals of Courtney. On June 9, 2004, Courtney and Quarries filed separate Chapter 11 bankruptcy petitions. On December 20, 2004, Donna and Tony Courtney filed a Chapter 11 bankruptcy petition. This adversary proceeding involves six loan transactions between the debtors and First Home, and the filing of a tax lien by the IRS. Since there is some question about the validity of these transactions, and the sufficiency of the perfection of the purported liens, I will discuss each transaction in some detail. On June 26, 1998, Donna and Tony and First Home executed a "Roll-over Promissory Note and Security Agreement" (Loan Number 43173) for the sum of $61,000. The balance due is $24,083.50. As security for this loan, Donna and Tony purported to grant First Home a security interest in the following vehicles: (1) a 1982 GMC Truck; (2) a 1984 GMC Truck; (3) a 1975 Ford Dump Truck; and (4) a 1978 GMC Truck. First Home's liens are clearly noted on the Certificates of Title, however, all four vehicles are titled in the name of Courtney Excavating & Construction, Inc., not Donna and Tony. On August 28, 1998, First Home advanced an additional $20,000. Apparently in conjunction with this transaction, First Home filed a UCC-1 on December 24, 1998. That UCC-1 lists Donna and Tony as the debtors, is signed by Donna and Tony, and purports to secure an interest in a "Case 580C with Buckets Backhoe Loader Serial No. 9011231, concrete forms, and a 720 Champion Grader Serial #7201422211358."

On January 12, 2000, Donna and Tony borrowed $175,000 from First Home (Loan Number 83229). Donna and Tony signed the promissory note and the security agreement. The security agreement contained an "after-acquired" property clause and listed as collateral a 943 Cat Track Loader, the limestone inventory, accounts receivable, chattel papers, contract rights, and general intangibles. First Home filed a UCC-1 on March 15, 2000, that listed Courtney Excavating and Construction, Inc. as the debtor, and was signed by Donna and Tony in their individual capacity. The UCC-1 contained the same collateral description as the security agreement.

On September 12, 2000, Courtney and Quarries borrowed $450,000 from First Home (Loan Number 84189). Donna and Tony personally guaranteed this loan. Separate security agreements identified the debtors as either Donna and Tony, Courtney, or Quarries and granted First Home a security interest in the following property:

| Courtney | Quarries | Donna and Tony |
|---|---|---|
| 1983 HMDE Trailer | 1973 International Dump | 1996 Buick |
| 1989 BLVD Flat bed | 1974 Timp Van | 1995 Dako |
| 1988 HMDE Trailer | | 1971 Diam Truck |
| 1991 Ford Pickup | | 1984 Frue Trailer |
| 1986 Ford Pickup | | 1984 Ford Pickup |
| 1973 Diam Pickup | | 1988 SNN HTRL |
| 1976 GMC | | 1977 Frue Trailer |

Each of these vehicles has an attendant Certificate of Title that accurately identifies the debtor and notes First Home's lien. Tony, as President of Courtney, and Courtney, as the sole member of Quarries, also granted First Home a deed of trust as to real estate described as "Lot 3, Block 8 in University Heights Subdivision, Phase I, a Subdivision in Mountain

3

Grove, Missouri, as per plat recorded in Plat Book 4 at Page 48." Quarries is the owner of this real estate. Additionally, Tony and Donna granted First Home a deed of trust as to three tracts of real estate owned by them and located in Wright County, Missouri.

On November 19, 2002, Courtney and Quarries executed a Letter of Credit with First Home in the amount of $325,000 (Loan Number 84927). The note is signed by Tony. Both Donna and Tony signed a loan extension agreement as to this Letter of Credit in their capacity as President and Secretary. There is an attendant security agreement that is unsigned.

On November 2, 2001, Courtney and Donna and Tony apparently borrowed $200,000 from First Home, because on October 3, 2002, they executed a loan extension agreement as to this loan (Loan Number 84919). They signed the loan extension agreement as President and Secretary. No signed security agreement was offered into evidence as to this loan extension.

Finally, on August 26, 2003, Donna and Tony, d/b/a Rock Quarries borrowed $185,000 from First Home. There is no signature on the note. The security agreement identifies Donna and Tony as the debtors and purports to grant security deeds of trust in the following: (1) Deed of Trust dated April 14, 1997 recorded in Book 166 Pages 187-188; (2) Deed of Trust dated March 1, 1999 recorded in Book 177 Pages 831-833; (3) Deed of Trust dated April 20, 1998 recorded in Book 172 Pages 22-23; (4) Deed of Trust dated January 23, 1999 recorded in Book 177 Pages 177-179; (5) Deed of Trust dated September 12, 2000 recorded in Book 188 Pages 73-74; and (6) Deed of Trust dated September 12, 2000 recorded

in Book 188 Pages 70-72. There is no signature page as to this security agreement.

In the meantime, on December 3, 2002, the IRS filed its Notice of Federal Tax Lien against Courtney in the amount of $506,368.77 notifying Courtney that the lien was recorded as of December 9, 2002. The IRS filed a proof of claim in Courtney's bankruptcy case that includes a secured claim in the amount of $723,759.37. Federal tax lien law provides that a federal tax lien automatically attaches to any property in which the debtor acquires an interest after the lien is recorded. In addition, the IRS claims that by virtue of the 45-day rule,[1] it has a superior interest in Courtney's accounts receivable in the amount of $70,774.17. The parties do not dispute this claim, nor do they deny the validity of the IRS lien to any unencumbered property, or any property acquired after December 3, 2002.

## DISCUSSION

First Home argues that the UCC-1 financing statement filed in Texas County, Missouri on March 14, 2000, and with the Missouri Secretary of State on March 15, 2000, perfected the promissory note and security agreement dated January 12, 2000. It argues that the fact that the security agreement was signed by Tony and Donna in their individual capacity does not defeat First Home's position because the security agreement recited that "the collateral has been, or is being, acquired for . . . business use."[2] First Home misreads the requirements of the Uniform Commercial Code (the UCC) that were in effect on January 12,

---

[1] 26 U.S.C. § 6323(c). Pursuant to this provision, First Home's security interest would only have priority as to accounts receivable that arose prior to the 46th day after the IRS's lien was filed, or January 23, 2003.

[2] Def. Ex. # 20.

5

2000, when Donna and Tony attempted to grant First Home a security interest in a 943 Cat Track Loader, the limestone inventory, accounts receivable, chattel papers, contract rights, and general intangibles.[3] A security interest is not valid, and does not attach, unless the person or persons granting the security interest had rights in the collateral:

> A security interest in collateral cannot be enforced against the debtor or third parties and does not attach unless the following conditions are met:
>
> (a) the collateral is in the possession of the secured party ... or the debtor has signed a security agreement which contains a description of the collateral ...;
>
> (b) value has been given; and
>
> (c) the debtor has rights in the collateral.[4]

As to the first transaction on June 26, 1998, Donna and Tony granted First Home a security interest in the following vehicles: (1) a 1982 GMC Truck; (2) a 1984 GMC Truck; (3) a 1975 Ford Dump Truck; and (4) a 1978 GMC Truck. First Home's liens are clearly noted on the Certificates of Title, but all four vehicles are titled in the name of Courtney Excavating & Construction, Inc. In other words, Donna and Tony were not the owners of this collateral when they granted the security interest, therefore, the security interest is not valid. Courtney owns the vehicles, and only Courtney or Courtney's principals signing in that capacity could grant a security interest. I, therefore, find that First Home does not have a valid security interest in the above vehicles. The IRS's lien is superior to the unattached lien

---

[3] Missouri has now adopted an amended version of Article 9 of the UCC, effective July 1, 2001.

[4] Mo. Stat. Ann. § 400.9-203 (Supp. 2000); *City of St. Peters, Missouri v. Hill*, 9 S.W.3d 652, 654 (Mo. Ct. App. 2000).

of First Home.

On August 28, 1998, First Home advanced an additional $20,000. Apparently in conjunction with this transaction, First Home filed a UCC-1 on December 24, 1998. That UCC-1 lists Donna and Tony as the debtors, is signed by Donna and Tony, and purports to secure an interest in a Case 580C with Buckets Backhoe Loader Serial No. 9011231, concrete forms, and a 720 Champion Grader Serial #7201422211358. Since Donna and Tony are the owners of this collateral, I find that the security interest above attached, and the UCC-1 filed on December 24, 1998, properly perfected that interest in the Case 580C with Buckets Backhoe Loader Serial No. 9011231, concrete forms, and a 720 Champion Grader Serial #7201422211358. First Home holds a superior position as to this collateral.

As to the second transaction on January 12, 2000, Donna and Tony signed the promissory note and the security agreement. The security agreement contained an "after-acquired" property clause and listed as collateral a 943 Cat Track Loader, the limestone inventory, accounts receivable, chattel papers, contract rights, and general intangibles. First Home then filed a UCC-1 on March 15, 2000, that listed Courtney Excavating and Construction, Inc. as the debtor, and was signed by Donna and Tony in their individual capacity. The UCC-1 contained the same collateral description as the security agreement. As with the vehicles above, Donna and Tony, in their individual capacity had no rights in the collateral that purportedly secures this transaction. I, therefore, find that the security agreement never attached, and the UCC-1 cannot perfect a lien that never attached to the collateral. The IRS's lien is superior to that of First Home as to this collateral.

As to the third transaction on September 12, 2000, Courtney and Quarries borrowed $450,000 from First Home. Donna and Tony personally guaranteed this loan. Separate security agreements identified the debtors as either Donna and Tony, Courtney, or Quarries and granted First Home a security interest in the following property:

| Courtney | Quarries | Donna and Tony |
|---|---|---|
| 1983 HMDE Trailer | 1973 International Dump | 1996 Buick |
| 1989 BLVD Flat bed | 1974 Timp Van | 1995 Dako |
| 1988 HMDE Trailer | | 1971 Diam Truck |
| 1991 Ford Pickup | | 1984 Frue Trailer |
| 1986 Ford Pickup | | 1984 Ford Pickup |
| 1973 Diam Pickup | | 1988 SNN HTRL |
| 1976 GMC | | 1977 Frue Trailer |

Each of these vehicles has an attendant Certificate of Title that accurately identifies the debtor and notes First Home's lien. As to all of these vehicles, I find that the debtor in each instance had rights in the collateral at the time the parties executed the security agreements, and First Home has a perfected and prior lien to that of the IRS.

Also on September 12, 2000, Tony, as President of Courtney and Courtney, as the sole member of Quarries, granted First Home a deed of trust as to real estate described as "Lot 3, Block 8 in University Heights Subdivision, Phase I, a Subdivision in Mountain Grove, Missouri, as per plat recorded in Plat Book 4 at Page 48." Quarries is the owner of this real estate. The debtors had rights in this collateral, the lien attached, and the deed of trust was properly perfected. First Home's lien is, thus superior to that of the IRS. Additionally, Tony and Donna granted First Home a deed of trust as to three tracts of real estate located in Wright County, Missouri. This Deed of Trust purports to bind Donna and Tony, Quarries,

and Courtney, though Donna and Tony are the grantors and the deed of trust is signed by Donna and Tony in their individual capacities. Since Donna and Tony are apparently the owners of this real estate, I find that First Home has a properly perfected lien that is superior to the lien of the IRS.

As to the letter of credit executed on November 19, 2002, purportedly between Courtney and Quarries and First Home, there is an attendant security agreement but it is unsigned. First Home does not contend that it is a secured creditor as to this transaction.

As to the loan extension agreement signed on October 3, 2002, apparently reflecting a loan to Courtney and Donna and Tony, again there is no signed security agreement. First Home does not contend that this is a secured transaction either.

An Order in accordance with this Memorandum Opinion will be entered this date.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: July 14, 2005

Copy of the above mailed electronically or conventionally to:

David E. Schroeder
Harold F. Glass, II
Cynthia J. Hyde
Stephanie M. Page